UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANNA LA FRONZA and NATALIA KUPIEC, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PEOPLECONNECT, INC., a Delaware Corporation, and INTELIUS LLC, a Delaware limited liability company,<br><br>Defendants. | No. 21 C 03027<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Anna La Fronza and Natalia Kupiec filed this putative class action against PEOPLECONNECT, Inc. and Intelius LLC, alleging that Defendants compiled and misappropriated their names and identities for commercial gain. Defendants moved to compel arbitration, or in the alternative to dismiss the complaint. Because the question of arbitrability raises certain material questions of fact, Defendants' motion is denied without prejudice and the Court authorizes the parties to engage in fact discovery limited to the issue of arbitrability.

**Background**

Defendants operate a people-search website, USSearch.com, that sells access to proprietary reports about people using data compiled from third-party sources, such as public record repositories. These reports may contain information including a person's address, birth date, marriage records, and criminal history.

1

When a user visits USSearch and searches for an individual by first and last name, the site displays a list of individuals with that name, along with certain unique identifying information such as age, location, and names of purported family members. Next to this information, under the header "Premium Report," is a button that reads "Get Your Report." However, USSearch does not offer an option to purchase the individual report on the search subject. Rather, clicking the "Get Your Report" button takes the user to a checkout page where USSearch offers a subscription service to customers whereby they can access an unlimited number of reports for a monthly fee. Plaintiffs allege that Defendants compiled and misappropriated their names and other personal information without their consent and are using that information for commercial gain—that is, to market and promote Defendants' monthly subscription service.

Before a USSearch user can access the results for a search, the user is notified that clicking the button to display the report constitutes affirmative consent to the site's Terms of Service. The TOS are accessible to anyone who visits the site and contain a provision stating that users agree to submit "any and all disputes and claims" with the site's operators to binding arbitration. R. 24-1, Ex. 1 § 13. Users are permitted to opt-out of the arbitration agreement by sending written notice to PeopleConnect within 30 days of their first use of the site, but there is no indication that the Plaintiffs did so here.

Plaintiffs allege that they have never been a customer of USSearch or any of Defendants' other websites. Nonetheless, the First Amended Complaint contains

2

screenshots from USSearch showing the search results for Kupiec's name. R. 11 ¶ 21. Defendants posit that Plaintiff's counsel accessed USSearch and obtained these screenshots through the site, which necessarily required acceptance of the TOS.

## Discussion

Because the Defendants have asserted that Plaintiffs' claims are subject to a binding arbitration agreement, the Court must consider that issue before reaching any of the other substantive defenses raised in Defendants' motion. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (noting that the Federal Arbitration Act requires district courts to enforce valid arbitration agreements); *Merit Ins. Co. v. Leatherby Ins. Co.*, 581 F.2d 137, 142 (7th Cir. 1978) ("When a motion to stay proceedings and compel arbitration … is filed, the court 'may consider only issues relating to the making and performance of the agreement to arbitrate.'" (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967))).

Plaintiffs seemingly do not dispute that USSearch users are fairly apprised of the arbitration agreement when they use the site. As a condition of accessing the free preview generated by a search, users are told they must accept the TOS and privacy policy, which are hyperlinked in blue in an outlined box. This is likely sufficient to put users on notice of the contractual arbitration clause. *See, e.g., Hubbert v. Dell Corp.*, 359 Ill. App. 976, 835 N.E.2d 113, 122 (2005) (finding that a customer who bought a computer online was sufficiently apprised of the contents of Dell's terms of service where a blue hyperlink appeared on each of the pages involved in completing the order); *Gorny v. Wayfair Inc.*, 2019 WL 2409595, at *6 (N.D. Ill. June 7, 2019) (enforcing arbitration agreement under Illinois law where the plaintiff agreed to a

hyperlinked Terms of Use containing an arbitration agreement when clicking on a "Place Your Order" button). In addition, the Court assumes for present purposes that Plaintiffs' claims are encompassed by the arbitration agreement, an issue neither side has addressed.

Instead, Plaintiffs argue that they *personally* are not bound by the arbitration clause. As mentioned above, both sides seem to agree that Plaintiffs themselves are non-signatories to the arbitration agreement, neither having personally used the USSearch website. While an arbitration agreement, like any contract, cannot be enforced against a party who has not agreed to it, "the obligation to arbitrate a dispute is not limited to those who have personally signed a written agreement." *Pereira v. Santander Consumer USA, Inc.*, 2012 WL 4464893, at *1 (N.D. Ill. Apr. 2, 2012); *see also Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017). Whether an arbitration agreement can be enforced against a non-signatory is a question of state law. *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1059 (7th Cir. 2018). Exceptions permitting enforcement against a non-signatory in Illinois include: "(1) assumption, (2) agency, (3) estoppel, (4) veil piercing, and (5) incorporation by reference." *Id.* at 1059-60.

Of these exceptions, Defendants have focused on agency. They contend that Plaintiffs are bound by the arbitration agreement because their attorneys consented to USSearch's TOS when they used the site to investigate their clients' claims. Plaintiffs' counsel has not explicitly stipulated to this fact but responded to the motion as though it is true.

4

In general, attorneys are considered both agents of their clients and independent contractors. *Selby v. O'Dea*, 156 N.E.3d 1212, 1227 (Ill. App. Ct. 2020). As agents, they owe fiduciary duties to their clients and may bind their clients by their actions. *See Horwitz v. Holabird & Root*, 816 N.E.2d 272, 277 (Ill. 2004) ("In the attorney-client relationship, clients are generally bound by their attorneys' acts or omissions during the course of the legal representation that fall within the apparent scope of their attorneys' authority."); *In re Estate of Maslowski*, 561 N.E.2d 1183, 1186 (Ill. App. Ct. 1990) (recognizing rebuttable presumption that an attorney has the authority to act for a client the attorney professes to represent). This can include an agent binding a principal to an arbitration agreement. *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 743 (7th Cir. 2010). But the law may also consider attorneys independent contractors in certain circumstances. *See Horwitz*, 816 N.E.2d at 278; *Selby*, 156 N.E.3d at 1228 (noting that attorneys are typically considered independent contractors "when it comes to imposing liability on clients for the intentionally tortious conduct of their attorneys").

Defendants suggest Plaintiffs' counsel's use of USSearch was within the scope of their representation, or that Plaintiffs ratified the conduct by incorporating the information and screenshots their attorneys gathered into their complaint. Either theory may be sufficient to establish an agency relationship. *See Progress Printing Corp. v. Jane Byrne Political Comm.*, 601 N.E.2d 1055, 1066-67 (Ill. App. Ct. 1992) (discussing theories of agency and ratification whereby actions of agent can bind principal either before or after the fact). But both theories raise issues of fact that are

5

not cleanly answered on the current record. *See Granite Props. Ltd. P'ship v. Granite Inv. Co.*, 581 N.E.2d 90, 92 (Ill. App. Ct. 1991) (noting that existence of agency relationship is a question of fact); *Sphere Drake Ins. Ltd. v. All Am. Life Ins. Co.*, 300 F. Supp. 2d 606, 623 (N.D. Ill. 2003) (noting that ratification may be inferred from the surrounding circumstances). And there can be no doubt that they are heavily contextual, as demonstrated by the differing outcomes in cases with similar circumstances to those presented here. *Compare, e.g., Indep. Living Res. Ctr. S.F. v. Uber Techs., Inc.*, 2019 WL 3430656, at *3-4 (N.D. Cal. July 30, 2019) (holding that paralegal was acting within the scope of her agency when she downloaded and tested app to "bolster [plaintiffs'] claim of discrimination"), *with Callahan v. PeopleConnect, Inc.*, 2021 WL 1979161, at *5-6 (N.D. Cal. May 18, 2021) (rejecting argument that plaintiff's attorney bound client to arbitration agreement when attorney accessed website just before filing suit as part of factual investigation).

  The Court finds it is unable to determine whether Plaintiffs are bound by the arbitration agreement in the USSearch TOS on the facts before it. The Court has some tentative sense of what Plaintiffs' counsel did in the leadup to this case and motion, but little insight into the words and actions of Plaintiffs themselves. It is this latter set of facts that matters most in evaluating the existence of an agency relationship. *See First Am. Title Ins. Co. v. TCF Bank, F.A.*, 676 N.E.2d 1003, 1008 (Ill. App. Ct. 1997) (noting that the existence of an agency relationship depends on the words and conduct of the alleged principal). Accordingly, the Court will deny the motion without prejudice and permit the parties to engage in limited discovery as to

the issue of arbitrability. *See Order* (R. 32), *Azuz v. Accucom Corp.*, No. 21-cv-1182 (N.D. Ill. Feb. 15, 2022) (in a case with similar facts, denying motion to compel arbitration without prejudice and granting limited discovery on issue of arbitrability).

## Conclusion

For the reasons set forth above, Defendants' motion to compel arbitration, or in the alternative to dismiss the complaint, is denied without prejudice. The Court authorizes the parties to engage in fact discovery limited to the issue of arbitrability, including any related issues necessary to resolve the motion to compel arbitration. If Defendants elect to depose either of the named Plaintiffs, that will not foreclose later depositions on the merits if necessary. All discovery on this issue shall be completed by June 15, 2022.

Once discovery is complete, the parties shall file a joint status report by June 22, 2022 with a proposal for next steps. The Court presumes no evidentiary hearing will be necessary, but if any party believes otherwise, they may file an appropriate motion.

ENTERED:

_Thomas M Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated: April 29, 2022